# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Prentis C. Jackson,

    Petitioner,

v.

Joan Fabian, Minnesota
Commissioner of Corrections,

    Respondent.

Civil No. 09-845 JRT/AJB)

**REPORT AND RECOMMENDATION**

      This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner Prentis C. Jackson is a prisoner confined at the Minnesota Correctional Facility at Oak Park Heights, Minnesota, as the result of a conviction and sentencing in Hennepin County District Court. Mr. Jackson was convicted by a jury on a charge of first-degree murder for which he was sentenced to a term of life imprisonment without the possibility of parole. The action has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b).

      The petitioner alleges that the trial court erred in denying his request that the jury be given an instruction regarding corroboration of accomplice testimony, in violation of his right to due process. Respondent expressly states that the petition for habeas corpus relief is opposed on the merits, but further asserts that federal review is limited to claims that have been fully exhausted in the state courts. For the reasons stated below it is recommended that the petition [Docket No. 1] be dismissed with prejudice.

**Background and Claims**

**Offense.**[1]  Petitioner Prentis Jackson ["Jackson"] was convicted of first-degree murder for the February 24, 2006, slaying of Michael Anthony Bluntson.  Mr. Bluntson died as the result of a single handgun shot to the face from close range as he walked on the sidewalk near the intersection of 25th Avenue North and Sixth Street in Minneapolis, Minnesota.  Jackson and Bluntson were known to one another and had several mutual friends/acquaintances, based in part upon gang affiliations.  The Minnesota Supreme Court described the trial testimony and pertinent circumstances as follows:

> Deshawn Jenkins and Alfred Lamar were members of a gang known as the EMB ("Emerson Money Boys" or "Emerson Murder Boys").  Lemuel Radcliffe and [Jackson]'s cousin Bernard Williams joined with the EMB as part of a consolidated gang known as the LMB ("Lyndale Mob Boys").  Jenkins, Lamar, and Williams testified at trial, but Radcliffe did not.  Lamar testified that [Jackson] was a member of the LMB.  Some of the gang members sold marijuana and crack cocaine outside Wafana's, a store located at the intersection of 24th Avenue North and Lyndale Avenue North in Minneapolis.  Bluntson was believed by some individuals to be a member of another gang known as the 2's & 3's.  Williams testified that [Jackson] had previously accused Bluntson of stealing sacks of marijuana that [Jackson] had hidden inside Wafana's . . . .
>
> Jenkins, Lamar, and Williams testified as to the events surrounding Bluntson's murder.  On the afternoon of February 24, 2006, Williams was shot in the left arm while standing outside Wafana's by a person whom he believed to be a member of the 2's & 3's and whom he had seen with Bluntson on prior occasions. . . . Lamar testified that the saw [Jackson] on Broadway, a North Minneapolis street, after the shooting.  According to Lamar, [Jackson] told Lamar that he had heard that the 2's & 3's shot Williams and declared that if he caught one of them he would "f* * * them up."
>
> Jenkins, Lamar, Radcliffe, Williams, and Bluntson were at Wafana's later in the day.  Photographs from the Wafana's surveillance camera that were introduced at trial established that Jenkins, Lamar, and Williams left the store at 6:27 p.m. and

---

[1]  Facts relating to the criminal charges are taken from State v. Jackson, 746 N.W.2d 894 (Minn. 2008).  See Smith v. Kemna, 309 Fed. Appx. 68 (8th Cir. 2009)(unpublished opinion)(facts quoted from state appellate decision).

2

that Bluntson left the store at 6:28 p.m. According to Williams, Jenkins and Radcliffe got into an argument with Bluntson after they left Wafana's. Williams testified Jenkins ordered Bluntson to leave and that Radcliffe told Bluntson, "[Y]our man shot my man." Jenkins, in contrast, denied that any such argument occurred. A police officer testified that a Wafana's employee told him that there had been an argument in the store shortly before Bluntson was shot.

Radcliffe drove Jenkins, Lamar, and Williams in Radcliffe's Suburban to Young's house, where they remained for a couple of minutes before [Jackson] joined them in the vehicle and Radcliffe drove away with his passengers. Near the intersection of 25th Avenue North and Sixth Street North, Radcliffe said, "[T]here he go right there." Lamar testified that someone in the Suburban suggested that [Jackson] "box" Bluntson and that [Jackson] stated that he was going to "crush him." Radcliffe stopped the Suburban, and [Jackson] left the vehicle. According to Williams, when [Jackson] got out of the Suburban he said, "I got something for this nigger."

Lamar testified that [Jackson] approached Bluntson on the sidewalk and that the two of them assumed boxing stances. According to Lamar, [Jackson] pulled a gun from his waist and pulled the trigger, but the gun did not fire. [Jackson] then pulled the trigger a second time, the gun fired, and Bluntson stumbled, grasping his face. Lamar related that someone in the Suburban said, "Shit, he shot him. He just f* * *ing shot him." According to Lamar, the Suburban's other occupants neither planned to shoot Bluntson nor indicated that they knew [Jackson] was going to shoot him, and they were "surprised," "shook up," and "panicking" after the shooting. Although Jenkins and Williams did not see [Jackson] shoot Bluntson, they both testified to hearing one gunshot after [Jackson] got out of the Suburban.

. . . Radcliffe drove away, and [Jackson] ran through some yards, met up with the Suburban, and reentered the vehicle. [Footnote 2]. Williams testified that

> [Footnote 2] Williams indicated that Radcliffe drove away when [Jackson] left the vehicle, but Lamar indicated that Radcliffe did not drive away until after the shot was fired. Furthermore, Lamar claimed that he left the Suburban as [Jackson] reentered the vehicle after the shooting.

someone asked [Jackson] what he did, to which [Jackson] responded, "I shot him in his f* * *ing face." The group returned to Young's house after the shooting, and Lamar observed [Jackson] empty the shells out of his gun and place them in his pocket. Jenkins testified that everyone at Young's house was talking about the shooting and the [Jackson] explained that "he lift[ed] the gun up," "it went click," and then "it kind of went boom." According to Jenkins, although [Jackson] was wearing a black hooded sweatshirt when [Jackson] got into the

3

> Suburban at Young's house, he saw [Jackson] wearing Williams' gray sweatshirt
> at Young's house after the shooting. At trial, Jenkins' and Lamar's descriptions
> of the gun they saw in [Jackson]'s possession after the shooting and Williams'
> description of a gun he had previously seen in [Jackson]'s possession were
> substantially similar.
>
> * * *
>
> Sergeant Thomsen testified that while the police were investigating the crime
> scene, a woman called and disclosed that she had been at Young's house, where
> she heard people talking about the shooting and observed young men with guns.
> When the police searched Radcliffe's Suburban, they found a bag that contained a
> gray sweatshirt with nine unfired .45-caliber bullets in a pocket and blood around
> the collar. A forensic scientist testified that the bullet retrieved from Bluntson's
> body could have been a .45-caliber bullet, and Sergeant Thomsen testified that the
> bullet "was in the category of a .45 or larger." The DNA profile of the blood on
> the sweatshirt matched Williams' DNA profile, and Williams identified the
> sweatshirt as the one he was wearing when he was shot. Williams testified that
> there were no bullets in his sweatshirt when he removed it as he fled Wafana's
> and that he did not know why his sweatshirt was in the Suburban. There is no
> evidence that Williams possessed the sweatshirt after he took it off earlier in the
> day.
>
> . . . . At trial, [Jackson]'s counsel argued "that the facts are pretty close to being
> right, [but] they just got the wrong guy." [Jackson] testified that he was not at
> Young's house on February 24, that he had nothing to do with the killing, and that
> he did not learn of Bluntson's death until almost a week after it occurred.
> [Jackson] also testified that he had argued with Williams a couple of weeks before
> the shooting.

State v. Jackson, 746 N.W.2d at 895-98.

**Procedural History.** Michael Anthony Bluntson was killed on February 24, 2006. Petitioner Prentiss Jackson was initially charged with murder by complaint filed on March 16, 2006. A Hennepin County grand jury indictment for first-degree premeditated murder under Minn. Stat. § 609.185(a)(1) (2006) and second-degree unpremeditated murder under Minn. Stat. § 609.19, subd.1(1) (2006) was returned on April 13, 2006. Mr. Jackson's first appearance in district court was on April 14, 2006. A jury trial commenced on October 23, 2006.

At the conclusion of the trial the defendant requested that the jury be given an

4

instruction on corroboration of accomplice testimony[2] with respect to testimony given by DeShawn Jenkins, Alfred Lamar, and Bernard Williams. The State opposed such an instruction and "[t]he court declined the request on the grounds that 'none of these parties would have been chargeable with the crime' and that [Jackson] claimed 'he wasn't even present at the scene.' [T.1385-92]."[3] The jury found the defendant guilty as charged by verdict returned on November 9, 2006, and Jackson was sentenced to life imprisonment without parole on November 21, 2006.

Mr. Jackson appealed the conviction directly to the Minnesota Supreme Court, alleging trial court error in refusing to give the accomplice corroboration instruction. The supreme court affirmed the conviction in an opinion dated April 10, 2008, therein concluding that Jenkins and Lamar could not have been indicted and convicted of Michael Bluntson's murder, and could not be considered accomplices, in the absence of evidence that they knew the defendant intended to kill Bluntson.[4] With respect to Williams the supreme court determined that any presumed error in failing to give the accomplice corroboration instruction was harmless in light of "the strong corroboration of Jenkins's and Lamar's non-accomplice testimony, the absence of evidence that Williams testified at trial in exchange for leniency, and the general instructions the district court gave the jury on witness credibility."[5] In his brief to the Minnesota

---

[2] Minn. Stat. § 634.04 (2006) provides:

> A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

[3] State v. Jackson, 746 N.W.2d at 898.

[4] Id.

[5] State v. Jackson, 746 N.W.2d at 899.

5

Supreme Court, Mr. Jackson did not expressly indicate the existence of a cause of action based upon federal law, and neither the United States Constitution nor federal case law was cited for any purpose in the direct appeal. Likewise, the supreme court opinion does not reference any federal claims and does not rely upon federal law as a basis for the decision. This habeas corpus case was commenced on April 13, 2009. Petitioner's sole claim is that the trial court's refusal to administer an accomplice testimony instruction was a violation of his right to due process.

**Standard of Review**

A writ of habeas corpus may issue only if the underlying state court adjudication resulted in a decision that (1) was contrary to clearly established federal law, or involved an unreasonable application of a clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). This court "presumes that the state court's factual determinations are correct," a presumption that "may be rebutted only by clear and convincing evidence." 28 U.S.C. § 2254(e)(1), Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Federal habeas relief is only available to a person in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991)("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). As a threshold matter, a petitioner must present a federal question in his petition for relief.

A federal district court may not conduct the initial review of a habeas petitioner's constitutional claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999). A state prisoner must normally exhaust all available state judicial remedies before a federal court will entertain a petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan at 842. The state

courts must have the first opportunity to hear the claim and "pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971)(citations omitted); Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

**Discussion**

**Exhaustion.** A federal court cannot consider the merits of a habeas corpus petition unless the petitioner can demonstrate exhaustion of all of the available state court remedies. 28 U.S.C. §2254(b) and (c), Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct. 1198 (1982). Exhaustion of state remedies is required to ensure that state courts have the initial opportunity to review and adjudicate a petitioner's federal constitutional claims. Coleman v. Thompson, 501 U.S. 722, 731 (1991). A claim is considered to be exhausted when the highest state court has been permitted a fair opportunity to rule on the factual and theoretical substance of the claim. Krimmel v. Hopkins, 56 F.3d 873, 876 (8th Cir.)(cert. denied, 116 S.Ct. 578 (1995)); Ashker v. Leapley, 5 F.3d at 1179 (citing Picard v. Connor, 404 U.S. at 275-278).

A petitioner's claims in a habeas corpus action must be based on an alleged violation of federal constitutional rights, as required by 28 U.S.C. § 2254(a). See Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.")(citations omitted). Simply stated, a prisoner cannot raise federal constitutional claims for the first time on petition for federal habeas corpus relief, and to provide the State the necessary opportunity to pass upon and correct alleged violations of its prisoner's federal rights, the prisoner must fairly present his constitutional claim in state court, thereby alerting the state court to the nature of the claim. Carney v. Fabian, 441 F.Supp.2d 1014, 1022 (D.Minn. 2006)(citations omitted). The federal nature of the claim must be fairly presented in state court by reference to a specific federal

7

constitutional right, a federal case, or a state case, which raises a pertinent federal constitutional issue. Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005); Abdullah v. Groose, 75 F.3d 408, 411-12 (8th Cir. 1996). "[O]rdinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim, in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004) (litigant "can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'")

In this instance, petitioner did not present a federal claim in his direct appeal to the Minnesota Supreme Court. Mr. Jackson's brief to the supreme court expressly presents the issues as: "Where a reasonable jury could have determined that the three alleged eye-witnesses who testified against Jackson were accomplices and there was little evidence other than the three eye-witness accounts, did the trial court's refusal to provide the accomplice testimony instruction prejudice Jackson."[6] Neither the statement of issues presented nor the ensuing written discussion explicitly indicate that the accomplice corroboration challenge was based upon federal law. There are no citations to the United States Constitution or federal case law for any proposition whatsoever in the appellant's brief, and as previously noted, the supreme court did not expressly or implicitly recognize the existence of any claims or implications based on federal law. The matter was addressed solely in the context of Minn. Stat. § 634.04 and applicable Minnesota state case law, without acknowledgment of any arguable federal claim. In short, neither the

---

[6] Respondent's Memorandum, Appendix C, Appellant's Brief, page 3.

petitioner's appellate brief nor the supreme court decision address issues of federal constitutional law either explicitly or by inference via citation to federal case law.

In petitioner's Memorandum of Law in Support of Petitioner for Writ of Habeas Corpus, Mr. Jackson purports to present his claim as a federal cause of action for violation of due process under the Fifth Amendment to the United States Constitution, and he cites several federal cases as support for his claim. Neither the federal claim nor the supporting cases were ever presented for consideration in state court proceedings. In a subsequent traverse in response to the Respondent's Memorandum, the petitioner contends that he "invoked the substance of his federal constitutional right to due process by requesting an instruction that would in return provide him with a fair trial."[7] However, in no context did the petitioner actually state that a federal constitutional claim was being alleged, and in fact, his state appeal was based wholly upon a specific Minnesota statute and pertinent Minnesota case law. Due process was not referenced as either a state law claim or as a federal cause of action. Petitioner did not fairly present his federal claim in state court and the claim is therefore unexhausted.

In addition to the absence of any reference to federal law in state court briefing, any contention by the petitioner that the existence of a federal cause of action is inherent in the nature of the accomplice-testimony-instruction claim is belied by the lack of any solidly recognized comparable federal right to such an instruction. To the contrary, the corroboration requirement of Minn. Stat. § 634.04 "is a matter of state law that does not implicate a constitutional right cognizable on habeas review." Redding v. State of Minnesota, 881 F.2d 575, 578 (8th Cir. 1989)(citations omitted). Directly stated, "there is no constitutional requirement

---

[7] Petitioner's Memorandum and Traverse of Return to Respondent's Answer.

that accomplice testimony be corroborated." Harrington v. Nix, 983 F.2d 872, 874 (8th Cir. 1993). See also United States v. Drews, 877 F.2d, 10, 12-13 (8th Cir. 1989). In the present case, even if the petitioner were to establish as a matter of fact that the three witnesses at issue were accomplices (which he has not done), he certainly has not shown the existence of any pervasive federal right to a jury instruction on corroboration of the testimony of such witnesses, regardless of any accomplice designation. Of course, this lack of a constitutional right to a corroboration instruction also speaks to the substance of the habeas corpus petition in this instance and compels the conclusion that the claim has no merit and is properly dismissed for that reason as well.[8]

**Procedural Default.** When a petitioner has failed to fairly present federal constitutional claims in state court, the federal court must determine whether the state procedural rules would allow hearing on the merits in a state court proceeding. McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or miscarriage of justice, can be demonstrated. Id. Under Minnesota law, "[o]nce a [defendant] has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." Cooper v. State, 745 N.W.2d 188, 190-91 (Minn. 2008)(quoting State v. Knaffla, 243 N.W.2d 737, 741

---

[8] 28 U.S.C. § 2254(b) provides;

> An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

10

(Minn. 1976)). If the petitioner has failed to exhaust his state court remedies, and if the court to which he should have presented his claim would now find it procedurally barred, then the claim is procedurally defaulted. Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is firmly established and regularly followed. Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995). Minnesota's Knaffla rule is a state procedural rule that is firmly established and regularly followed. See 9 MINN. PRAC., CRIMINAL LAW AND PROCEDURE § 39.1 (3rd ed.)(stating Knaffla rule is "frequently and strictly applied to deny relief in post conviction proceedings.) The basis for the accomplice testimony claim that is now asserted as a federal cause of action in the petition for writ of habeas corpus was known and should have been raised in the direct appeal to the supreme court as a federal claim. The federal claim was not raised and the cause of action is now procedurally defaulted.

Although the state court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991.)) Petitioner in this instance offers absolutely no explanation or cause for not explicitly alleging federal claims on direct appeal. Furthermore, petitioner has not alleged the actual prejudice necessary to overcome procedural default. "To demonstrate prejudice, a petitioner must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions.'" Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995)(citations omitted). Petitioner in this matter has neither picked up the challenge nor

carried the burden of showing cause and prejudice as required to avoid dismissal of his claim based upon procedural default. Likewise, petitioner has not made a showing of fundamental miscarriage of justice with respect to his claim because he has offered no compelling evidence to demonstrate "that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall v. Benson, 114 F.3d 754, 758 (citing Brownlaw v. Groose, 66 F.3d 997, 999 (8th Cir. 1995)(quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 867 (1995)). Petitioner's submissions, including the traverse, do not contain any substantive discussion that might constitute a demonstration of cause and prejudice or fundamental miscarriage of justice. Since the prisoner has procedurally defaulted his unexhausted claims, and therefore has no further opportunity to exhaust those claims in state proceedings, dismissal of this action without prejudice to permit full exhaustion is not required and the petition is properly dismissed with prejudice on procedural grounds.

Based upon all of the files, records, and proceedings herein, the magistrate judge makes the following:

### RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Prentis Cordell Jackson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **dismissed with prejudice**.

Dated:     September 18, 2009

                                           s/Arthur J. Boylan
                                          Arthur J. Boylan
                                          United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before October 2, 2009. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Eighth Circuit Court of Appeals.